1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DE XIANG HOLDING LTD., AMBLESIDE
HOLDINGS USE, INC., and QIAO YI,

                Creditors/Appellants,

    v.

MICHAEL KLEIN, CHAPTER 7 TRUSTEE
FOR THE BANKRUPTCY ESTATE OF
SILVER PLAZA, LLLP,

             Appellee.

CASE NO. 2:22-cv-00940-JHC

ORDER AFFIRMING BANKRUPTCY
COURT'S RULING

## I

### INTRODUCTION

This appeal arises from the bankruptcy court's May 19, 2022, oral ruling sustaining the objections of Michael Klein, the Chapter 7 Trustee ("Appellee") for the Bankruptcy Estate of Silver Plaza, LLLP ("Debtor") and disallowing the proofs of claim filed by De Xiang Holding Ltd., Ambleside Holdings USA, Inc., and Qiao Yi (collectively, "Appellants"). Dkt. # 7 at 5. Having considered the briefs of the Appellants and Appellee, the file herein, and the applicable law, the Court AFFIRMS the bankruptcy court's decision.[1]

---

[1] The Court determines that oral argument is unnecessary. *See* FED. R. BANKR. P. 8019(b)(3).

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 1

## II

### BACKGROUND

Rongfang "Flora" Chan is the 99% owner of Debtor.  Dkt. # 9-26 at 4.  Chan and Appellants entered into a partnership, Washington Hotel Development, LP, to develop a hotel in Marysville, Washington ("Marysville Hotel Project").  Dkt. # 8-1 at 15, 57.  This partnership, an entity formed by Chan and Appellant Qiao Yi, owned the Marysville Hotel Project.  *Id.* at 15, 58. Washington Consultants, LLC, an entity owned 50-50 by Chan and Yi, was a general partner of the partnership.  *Id.* at 15.  Appellant De Xiang Holding, Ltd., an entity owned by Yi, was made a limited partner of the partnership.  Dkt. # 8-1 at 15; Dkt. # 9-4 at 9.  De Xiang Holding, Ltd, invested $1.8 million in the partnership.  *Id.*  Yi then formed Ambleside Holdings USA, Inc., an Appellant here, which invested an additional $1.8 million in the partnership.  Dkt. # 8-1 at 13. Washington Consultants, LLC and the partnership ("Marysville Hotel Project Entities") together entered into two agreements with Washington Building Supply, LLC ("Building Supplies"[2]), owned by Chan.  *Id.* at 16.  Ultimately unsuccessful, the Marysville Hotel Project was placed into a receivership on August 15, 2019.  Dkt. # 9-27 at 25 – # 9-30 at 57.

In November 2020, Appellants filed a complaint relating to the above transactions in King County Superior Court against Chan, Debtor, and other entities, asserting claims for breach of contract, fraud, unjust enrichment, conversion/misappropriation, breach of fiduciary duty, and breach of the duty of good faith and fair dealing, Dkt. # 8-1 at 11–27; and they filed an amended complaint on March 3, 2021, adding a claim for voidable transfer, Dkt. # 8-1 at 28–44. Appellants claimed that Chan had "enticed Plaintiff [Qiao] Yi […] into investing millions into a

---

[2] In the interest of clarity, to be consistent with the bankruptcy court, this order uses the shortened name "Building Supplies" instead of "Building Supply."

hotel construction project," Dkt. # 8-1 at 12, which was ultimately unsuccessful.  Appellants

moved for a prejudgment writ of attachment and garnishment in the superior court.  *Id.* at 45–55.

A prejudgment writ of attachment ("Prejudgment Writ") was granted by the superior court on

February 18, 2021.  *Id.* at 73–113.[3]  The Prejudgment Writ attached property belonging to the

Debtor.  *Id.*  The Prejudgment Writ includes no findings of fact or conclusions of law.  *Id.*; Dkt. #

9-19 at 19.

On August 19, 2021, Debtor filed for bankruptcy under Chapter 11, Dkt. # 7 at 6; Dkt. #

9 at 11, and the bankruptcy court converted it to a Chapter 7 proceeding on November 2, 2021,

Dkt. # 9 at 12.  On December 2, 2021, Appellants filed proofs of claim #11, #12, and #13 against

Debtor totaling $4.1 million and submitted the Prejudgment Writ to support their claims.  Dkt. #

9-1 at 1–10; Dkt. # 9-2 at 1–10; Dkt. # 9-3 at 1–10.  On January 19 and 20, 2022, Appellee

objected to Appellants' proofs of claim.  Dkt. # 9-8 at 1–6; Dkt. # 9-11 at 1–5; Dkt. # 9-10 at 1–

6.

On March 9, 2022, the bankruptcy court conducted its first hearing on Appellee's

objections and, while it found Appellants had not set forth a sufficient basis for their claims to be

entitled to prima facie validity, it allowed Appellants more time to supplement their proofs of

claim.  Dkt. # 9-19 at 25 ("[N]either the claim verbiage nor the attached order [(i.e., the

Prejudgment Writ)] describes any basis for a claim.  […]  The claims therefore do not set forth a

basis for a claim against Silver Plaza, LLLP, sufficient to be entitled to prima facie validity.").

Appellants then filed amended proofs of claim asserting liability on three grounds: "(1) based on

actual transfers between [The Marysville Hotel Project] that they invested in that were

---

[3] During the superior court proceedings on the Appellants' motion for writ of attachment and
garnishment, Appellants ultimately pursued only a writ of attachment.  Dkt. # 9-4 at 82.

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 3

transferred to Silver Plaza […], (2) alter ego and (3) veil piercing theories between Silver Plaza and other Flora Chan entities, that were expressly adopted by the King County Superior Court in entering [the] [P]rejudgment [W]rit ."  Dkt. # 8-1 at 10.  On April 13, 2022, the bankruptcy court heard oral argument on Appellee's claim objections.  Dkt. # 9-40.  On May 19, 2022, the bankruptcy court issued an oral ruling sustaining Appellee's objections and disallowing Appellants' proofs of claim.  Dkt. # 8.

## III

### ISSUES ON APPEAL

Appellants initially designated nine issues on appeal.  Dkt. # 6-1 at 47–50.  But in their opening brief, Appellants list six issues for review, Dkt. # 7 at 7–8, and brief only three, Dkt. # 7 at 16–19.  Federal Rules of Bankruptcy Procedure 8014(a)(8) requires an appellant's argument to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]"[4]  If an appellant does not substantively argue an issue presented on appeal, that issue is forfeited.  *See Hoyos v. Davis*, 51 F.4th 297, 304 n.5 (9th Cir. 2022) ("[Appellant] mentions, but does not substantively argue, his [theory] in his briefing before our court.  Therefore, this argument is forfeited."); *United States v. Loya*, 807 F.2d 1483, 1487 (9th Cir. 1987) ("Issues raised in a brief which are not supported by argument are deemed abandoned.").  In their reply, Appellants state, "the number of possible legal issues has dwindled since the appeal was filed (9), down to three (3)."  Dkt. # 10 at 2.  Therefore, the Court addresses these three issues, as argued in Appellants' opening brief, on appeal:

1.  Whether the *Rooker-Feldman* doctrine deprived the bankruptcy court of jurisdiction to allow or disallow the proofs of claim.  Dkt. # 7 at 13, 16–17.

---

[4] This "is derived from […] F.R.App.P. 28."  FED. R. BANKR. P. 8014, 2014 Amendments advisory committee notes.

2. Whether the bankruptcy court erred by misapplying Washington state law on the issue of alter ego/piercing the corporate veil. *Id.* at 13, 17–18.[5]

3. Whether the bankruptcy court erred in finding no disputed issue of material fact for either alter ego/pierce the corporate veil or unjust enrichment on the record provided. *Id.* at 14, 18–19.

**IV**

**STANDARDS OF REVIEW**

Questions of jurisdiction are reviewed de novo. *In re Castlerock Properties*, 781 F.2d 159, 161 (9th Cir. 1986).

Review of a bankruptcy court's decision to allow or disallow a proof of claim is reviewed for an abuse of discretion. *In re Networks Elec. Corp.*, 195 B.R. 92, 96 (B.A.P. 9th Cir. 1996) ("the bankruptcy court has sole jurisdiction and discretion to allow or disallow the claim under federal law."); *see also In re Brotman Medical Center, Inc.*, No. CC-11-1131-PaMkLa, 2012 WL 603709, at *6 (B.A.P. 9th Cir. Jan. 31, 2012) ("We review a bankruptcy court's decision to allow or disallow a proof of claim for an abuse of discretion."). The Ninth Circuit applies a two-part test to determine whether a lower court has abused its discretion. *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009). First, the court analyzes de novo "whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* at 1262. Second, "[i]f the trial court identified the correct legal rule" the court determines whether the lower court's "findings of fact, and its application of those findings of fact to the correct legal standard, were illogical, implausible, or without support in inferences that may be drawn from the facts in the

---

[5] Appellee says that Appellants omitted this issue from the Designation of Records and therefore this Court has no jurisdiction to hear it. Dkt. # 9 at 18. Under Federal Rule of Bankruptcy Procedure 8009(a)(1)(A), "[t]he appellant must file with the bankruptcy clerk and serve on the appellee a designation of the items to be included in the record on appeal and a statement of the issues to be presented." Issue six in Appellants' Statement of Issues states that the bankruptcy court "improperly applied Washington law in favor of the moving, not, non-moving party." Dkt. # 6-1 at 48. Viewed in context, this appears to raise the issue. And Appellants proceeded to provide argument on it.

record." *Id.*; *see also In re Clark*, 548 B.R. 246, 252 (B.A.P. 9th Cir. 2016) ("A factual finding is clearly erroneous if it is (1) illogical; (2) implausible; or (3) without support in inferences that may be drawn from the facts in the record."). Therefore, findings of fact in a proceeding allowing or disallowing a claim are reviewed for clear error.[6]

## V

### ANALYSIS

A.     Ruling on Appeal.

Appellants timely appeal the bankruptcy court's May 19, 2022, oral ruling sustaining Appellee's objections and disallowing Appellants' proofs of claim. Dkt. # 7 at 5. A bankruptcy proceeding that addresses objections to a proof of claim is a contested matter. FED. R. BANKR. P. 9014 advisory committee notes. A ruling on a contested matter is appealable if it is a final order, meaning it "1) resolves and seriously affects substantive rights and 2) finally determines the discrete issue to which it is addressed." *In re Frontier Props., Inc.*, 979 F.2d 1358, 1363 (9th Cir. 1992). When a claim is allowed, it "authorizes a creditor to participate in the bankruptcy process and receive distribution payments from the estate." *In re Blendheim*, 803 F.3d 477, 481 (9th Cir. 2015). Thus, an order allowing or disallowing a claim affects the substantive rights of parties. *Cf. In re New Life Health Center Co.*, 102 F.3d 428, 428 (9th Cir. 1996) (bankruptcy court's order granting party an extension of time to file a proof on claim was not appealable "because it does not decide the merits of the [party's] claim" and the order "does not determine that the [party's] claim will be allowed[.] […] It does not resolve and seriously affect

---

[6] Federal Rule of Bankruptcy Procedure 9014(c) states that Federal Rule of Bankruptcy Procedure 7052 applies to contested matters. Federal Rule of Bankruptcy Procedure 7052 applies Federal Rule of Civil Procedure 52 to adversary proceedings. Federal Rule of Civil Procedure 52(a)(6) states that finding of fact must not be set aside by the reviewing court unless it is clearly erroneous. As discussed below, the bankruptcy court's allowance or disallowance of a claim is a contested matter.

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 6

substantive rights."). Thus, the order sustaining Trustee's objections and disallowing Appellants' proofs of claim was an appealable, final order. While somewhat unclear, it appears Appellee does not dispute this.

In Appellants' "Summary of Argument" within their opening brief, they critique the bankruptcy court's denial of their Motion for Relief from Stay.[7] Dkt. # 7 at 12–13. Appellants cite *In re Aquarius Disk Services, Inc.*, 254 B.R. 253 (Bankr. N.D. Cal. 2000), for the proposition that a "prejudgment attachment lienholder may obtain relief from the stay to perfect by judgment an interest in property seized under a writ of attachment." *Id.* But Appellants did not appeal the bankruptcy court's denial of their Motion for Relief from Stay, and they acknowledge they did not do so. Dkt. # 10 at 3. Therefore, this order does not address Appellants' arguments about the bankruptcy court's decision to deny their Motion for Relief from Stay despite their Prejudgment Writ. Dkt. # 7 at 12–13.

Appellee says that, because Appellants did not appeal the bankruptcy court's denial of their Motion for Relief from Stay, any claims that the bankruptcy court did not have jurisdiction are moot. Dkt. # 9 at 5. The Court disagrees. Whether the *Rooker-Feldman* doctrine precluded the bankruptcy court from allowing or disallowing the proofs of claim is a jurisdictional question reviewable by this Court. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005).

Finally, Appellee says that Appellants did not appeal the later adversary proceeding ruling that avoided the lien. Dkt. # 9 at 5. Appellants reply that they did not need to appeal that

---

[7] When Appellee filed for bankruptcy, the state court proceedings were automatically stayed. Dkt. # 9-40 at 12. Appellants then moved for Relief from Stay with the bankruptcy court. Dkt. # 9-12 at 1–8. The bankruptcy court denied the motion. Dkt. # 9-40 at 15.

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 7

ruling because "if the order being appealed here automatically resulted in the judgment, then conversely reversing the order would invalidate the later-Judgment as well." Dkt. # 10 at 3-4. The Court agrees with Appellants on this point. Nevertheless, as explained below, the Court affirms the bankruptcy court's disallowance of Appellants' proofs of claim.

B.    The *Rooker-Feldman* Doctrine did not Preclude the Bankruptcy Court
      from Deciding Whether to Allow or Disallow Appellants' Proofs of
      Claim.

Appellants say that the bankruptcy court's "adverse decision on the creditors' proofs of claim constituted an improper collateral adjudication under [the] *Rooker-Feldman* [doctrine.]" Dkt. # 7 at 7. Specifically, Appellants say that the doctrine barred the bankruptcy court from "evaluating the prejudgment writs of attachment" and that the court "should have declined the [Appellee's] invitation for it to negate, modify, or second-guess the wisdom of the State Court's prior ruling." *Id.* at 16. Appellee responds that they did not ask the bankruptcy court to overturn the Prejudgment Writ nor did the bankruptcy court modify the state court ruling on it. *Dkt. # 9* at 20.

The *Rooker-Feldman* doctrine stems from two decisions by the United States Supreme Court: *Rooker v. Fidelity Tr. Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). *Exxon Mobil Corp.* clarifies that the appropriate application of the *Rooker-Feldman* doctrine is limited to the narrow situation presented in both *Rooker* and *Feldman*: "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment[.]" 544 U.S. at 291; *see also Skinner v. Switzer*, 562 U.S. 521, 532 (2011).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

To determine whether the *Rooker-Feldman* doctrine applies, the "district court first must determine whether the action contains a forbidden de facto appeal of a state court decision" that exists when "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision." *Bell v. City of Boise*, 709 F.3d 890, 897 (9th Cir. 2013) (internal citation and quotation omitted).

In Appellee's objections to Appellants' proofs of claim, they did not claim injury caused by the state court Prejudgment Writ, nor did they invite the bankruptcy court to "review" or "reject" the Prejudgment Writ. Dkt. # 9-8 at 1–6; Dkt. # 9-11 at 1–5; Dkt. # 9-10 at 1–6. In Appellee's objections, they argued the proofs of claim were not secured, did not establish the Debtor owed Appellants any money,[8] and did not comply with Bankruptcy Rule 3001(d).[9] Dkt. # 9-8 at 2–5; Dkt. # 9-11 at 2–5; Dkt. # 9-10 at 2–5.

As explained by the bankruptcy court, when "a proof of claim [is] executed and filed in accordance with [the Federal Rules of Bankruptcy Procedure, it] shall constitute prima facie evidence of the validity and amount of the claim." FED. R. BANKR. P. 3001(f); Dkt. # 8 at 18. But when it does not, the claim is not granted prima facie validity. The bankruptcy court, having determined Appellants "did not set forth a sufficient basis for their claim to be entitled to prima facie validity" and, even if they had, Appellee had "submitted sufficient evidence to rebut the

---

[8] Appellee objected to Appellants' proofs of claim because the only documentation Appellants attached to their proofs of claim was the Prejudgment Writ, which did not rule on the merits of the underlying matter. Dkt. # 9-8 at 2–3; Dkt. # 9-11 at 2–3; Dkt. # 9-10 at 2–3.

[9] Federal Rule of Bankruptcy Procedure 3001(d) states, "[i]f a security interest in property of the debtor is claimed, the proof of claim shall be accompanied by evidence that the security interest has been perfected." Appellee said a Prejudgment Writ of Attachment "cannot be perfected by merely filing a proof of claim[.]" Dkt. # 9-8 at 3; Dkt. # 9-11 at 3; Dkt. # 9-10 at 3 (citing *In re Southern California Plastics, Inc.*, 165 F.3d 1243, 1246 (9th Cir. 1999) in all objections).

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 9

presumption," evaluated whether Appellants had presented evidence sufficient to establish their unjust enrichment and alter ego/piercing the corporate veil claims against Debtor.  Dkt. # 8 at 20.

The *Rooker-Feldman* doctrine did not preclude the bankruptcy court from disallowing Appellants' proofs of claim because it was not reviewing or rejecting any state court judgment. *See Exxon Mobil Corp.*, 544 U.S. at 291; *Bell*, 709 F.3d at 897.  Appellee was not "complaining of an injury caused" by a state-court judgment nor were they asserting that a state court judgment was erroneously decided.  *See Exxon Mobil Corp.*, 544 U.S. at 291; *Bell*, 709 F.3d at 897.

C.    Appellants Conflate the Bankruptcy Court's Analysis of Unjust
       Enrichment with its Analysis of Alter Ego and Piercing the Corporate
       Veil.

Appellants say the bankruptcy court "erred in misapplying Washington law on alter ego/piercing the corporate veil."  Dkt. # 7 at 13.  But the section of the bankruptcy court's ruling Appellants highlight includes only the bankruptcy court's analysis of Appellants' unjust enrichment claim.  Dkt. # 7 at 17 (citing Dkt. # 8 at 27–31 ("Exhibit A at pp. 25-29 of 39")).  Appellants have not designated as an issue for appeal that the bankruptcy court misapplied Washington law on unjust enrichment.  Dkt. #6-1 at 47–50.

And Appellants assert that the bankruptcy court improperly required a tracing analysis for Appellants' alter ego and piercing the corporate veil claims.  Dkt. # 7 at 17.  Appellants point to Washington case law that sets forth the requirements for determining whether a corporation is a private person's alter ego, including analyzing whether funds were commingled.  *Id.* (citing *Joon Kim v. Rosellini*, No. 70063-4-I, 2014 Wash. App. LEXIS 1950, at *7 (Wash. Ct. App. Aug. 11, 2014); *In re Marriage of Noble*, No. 71206-3-I, 2016 Wash. App. LEXIS 929, at *21 (Wash. Ct. App. May 2, 2016)).  This consideration, Appellants argue, "inherently preclude[s] strict tracing."  *Id.*  But the bankruptcy court's analysis of whether funds were traceable to Appellants

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 10

1    is not within its analysis of alter ego but solely within its analysis of Appellants' unjust

2    enrichment claims.  Dkt. # 8 at 27–31.  The bankruptcy court did not conduct a strict tracing

3    analysis for Appellants alter ego and piercing the corporate veil claims.  *Id.* at 31–37.

4    D.      The Bankruptcy Court Properly Considered the Evidence Presented by
             Appellants.

5            The bankruptcy court considered Appellants' unjust enrichment and piercing the

6    corporate veil theories as bases for liability as to the Debtor for Appellants' claims against Chan.

7    Dkt. # 8 at 25.  Appellants say the bankruptcy court "failed to properly credit the evidence

8    marshalled by the Appellants to show unjust enrichment, alter ego, or pierce the corporate veil

9    liability."  Dkt. # 7 at 18.  As stated above, this Court reviews the bankruptcy court's findings of

10   fact for clear error.  *See supra* note 6; *In re Clark*, 548 B.R. at 252 ("A factual finding is clearly

11   erroneous if it is (1) illogical; (2) implausible; or (3) without support in inferences that may be

12   drawn from the facts in the record.").

13           1.      The bankruptcy court properly considered the evidence when it
                     found Appellants did not establish their unjust enrichment claim.

14           Appellants assert, "No direct evidence existed of [Debtor] receiving funds from the Hotel

15   venture directly, but there certainly was extensive evidence of the Hotel sending substantial

16   funds to other Chan entities, and other Chan entities sending money to [Debtor]."

17   Dkt. # 7 at 18–19.  Appellants claim, therefore, that "the oral findings in the transcript at 25:7–10

18   of Exhibit A are roundly contradicted by the clear transfers set forth in Exhibit K."  *Id.* at 19.

19           As properly stated by the bankruptcy court (Dkt. # 8 at 26), to establish a claim for unjust

20   enrichment under Washington law, a claimant must show "(1) the defendant receives a benefit,

21   (2) the received benefit is at the plaintiff's expense, and (3) the circumstances make it unjust for

22   the defendant to retain the benefit without payment."  *Young v. Young*, 191 P.3d 1258, 1263

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

(Wash. 2008); *see also Baile Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 810 P.2d 12, 18, *amended sub nom. Bailie Commc'ns, Ltd. v. Trend Bus. Sys., Inc.*, 814 P.2d 699 (Wash. Ct. App. 1991) ("Unjust enrichment occurs when one retains money or benefits which in justice and equity belong to another.")*; Samra v. Singh*, 479 P.3d 713, 722–724 (Wash. Ct. App. 2020) (holding that claimants of unjust enrichment must present evidence proving they conferred a benefit on the allegedly unjustly enriched party). The bankruptcy court found that Appellants' assertion of unjust enrichment against Debtor was "not established by the evidence they [] presented in that the evidence presented does not show that funds received by the debtor from any Chan-controlled entity came at the [Appellants'] expense or that it is unjust that the debtor retained funds transferred from [] Chan-controlled entities." Dkt. # 8 at 26–27. The Court notes that Appellants do not cite the record for their assertion that "there certainly was extensive evidence of the Hotel sending substantial funds to other Chan entities, and other Chan entities sending money to Silver Plaza." Dkt. # 7 at 18–19; *see also* Dkt. # 10 at 7.

Next, it is unclear what evidence within Exhibit K, cited in their opening and reply briefs, Dkt. # 7 at 19; Dkt. # 10 at 7, Appellants say the bankruptcy court considered in a clearly erroneous fashion.

If Appellants are arguing that Exhibit K (Dkt. # 8-10) shows direct transfers beyond what the bankruptcy court analyzed in their oral ruling, Dkt. # 8 at 27, the Court does not see any additional direct transfers between Chan-controlled entities and Debtor. As the bankruptcy court correctly explained, "the only evidence presented of direct transfers from a Chan-controlled entity involved in the Marysville Project to the Debtor are transfers totaling $321,300 from Building Supplies." Dkt. #8 at 27; *see* Dkt. # 8-10. The bankruptcy court diligently analyzed the transfers of funds in and out of Debtor's bank account. Dkt. # 8 at 27–29 (analyzing evidence

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 12

1   included in the record on appeal at Dkt. # 9-23 at 47–61, Dkt. # 9-24 at 1–36; Dkt. # 9-20 at

2   117–184; Dkt. ## 9-21 – 9-22 at 35; Dkt. # 9-38 at 3–5).  The bankruptcy court found the

3   transfers to Building Supplies "could not have come directly from [Chan-Controlled

4   Washington] Hotel Development [LP]."  *Id.* at 28.  And Appellants do not illustrate how the

5   evidence provided on appeal shows anything different.  Based on the evidence provided by

6   Appellants to the bankruptcy court, it found that none of the funds were traceable to Appellants,

7   Dkt. #8 at 27–29, as required for a finding of unjust enrichment under Washington law, *see*

8   *Young*, 191 P.3d at 1263; *see also Baile Commc'ns, Ltd.*, 810 P.2d at 18.  This Court agrees.

9        If Appellants are arguing that their "Black Box" and "Recursive Algorithm" theories[10]

10  provide evidence that Appellants sent funds to Chan or Chan-controlled entities, which then

11  transferred the funds to Debtor, the Court points out that Appellants' "Black Box" and

12  _____

13      [10] Appellants provide these two theories to support their assertion that funds were inappropriately
        transferred from the Marysville Hotel Project Entities directly or indirectly to the Debtor.  Dkt. # 9-20 at
        16.

14         The Black Box Theory, as described by Appellants, "assumed a relevant universe of accounts
        consisting of the [Marysville Hotel Project Entities], [the Debtor] on the other, and any Chan or Chan-
15      controlled entity account that sent or received any funds to or from these two end points, which
        [Appellants] treated as a Black Box in between the two poles."  Dkt. # 9-20 at 17.  The "total sums that
16      the [Marysville Hotel Project Entities] sent into the 'black box,' and deducted the total amounts sent back,
        to arrive at the net amount that the [Marysville Hotel Project Entities] sent to Chan and her entities ('Net
17      Outflows').  We then totaled the amounts that went from the black box into [the Debtor], excluding the
        legitimate amounts made by identifiable lenders and investors ('Net Unsupported Inflows').  If Net
18      Outflows from the [Marysville Hotel Project Entities] were larger than Net Unsupported Inflows into [the
        Debtor], the Net Unsupported Inflows should represent the amount of the [Marysville Hotel Project
19      Entities'] funds that went into [the Debtor]."  Dkt. # 9-20 at 17.

20         The Recursive Algorithm Theory involved the identification of "all transactions involving all
        bank accounts that transacted with either the [Marysville Hotel Project Entities] and [the Debtor], which
21      [] are referred [to] as the 'Intermediary Accounts.'  All transactions involving the Intermediary Accounts
        were first compiled into a transaction database.  Using the transaction database, we established another
22      database tracking the maximum amount each account transacted with any other account ('Total
        Receipts').  Ignoring the date of the transaction, if the algorithm found a fully connected pathway from a
23      Project Company account, through one or more Intermediary Accounts, to [the Debtor], then the
        algorithm counted the amount received by [the Debtor], capped by the Intermediary Account's Total
24      Receipts, as an amount from the Project Companies to [the Debtor] ('Linked Amount'). […]  The
        algorithm runs through the whole transaction pool and only counts Linked Amounts up to the Total
        Receipts amount."  Dkt. # 9-20 at 19.

"Recursive Algorithm" theories are not included in Exhibit K.  Dkt. # 8-10.  Moreover, the

bankruptcy court found that the asserted $911,500 from the Black Box to Debtor "has not been

shown to be funds from" Appellants.  Dkt. # 8 at 30.  Similarly, the bankruptcy court found that

Appellants' Recursive Algorithm theory failed for similar reasons: it did not illustrate that

specific funds Appellants contributed to the Marysville Hotel Development were transferred to

any Chan-controlled entity nor were transferred to Debtor.  *Id.* at 31.  The Court agrees.  As

stated above, an unjust enrichment claim requires a claimant to show "(1) the defendant receives

a benefit, (2) the received benefit is at the plaintiff's expense[.]  *Young v. Young*, 191 P.3d 1258,

1263 (Wash. 2008); *see also Baile Commc'ns, Ltd.*, 810 P.2d at 18; *Samra*, 479 P.3d at 722–724.

The two theories provided by Appellants do not show that the Debtor received any funds from

Appellants.

Based on the evidence provided to the bankruptcy court and included in the record on

appeal, this Court does not find that the bankruptcy court's findings of fact on Appellants' unjust

enrichment claim were clearly erroneous as they were neither implausible nor illogical.  *In re*

*Clark*, 548 B.R. at 252.

2.      The bankruptcy court properly considered the evidence when it
        found Appellants did not establish their alter ego/piercing the
        corporate veil claim.

Appellants next argue that the bankruptcy court's finding rejecting alter ego and piercing

the corporate veil liability "was belied by extensive uncontested evidence in the record that the

owner of Silver Plaza interchangeably used and dominated different corporate entities to

effectuate the owner's personal commercial objectives, and that she engaged in fraudulent

conveyances in this case with transfers between Silver Plaza and a family member."  Dkt. # 7 at

19.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

As properly stated by the bankruptcy court, (Dkt. # 8 at 31–34), to establish a basis for disregarding the corporate form (i.e., piercing the corporate veil) under Washington Law, "two essential factors" must be met. *Meisel v. M & N Mod. Hydraulic Press Co.*, 645 P.2d 689, 692 (Wash. 1982). "First, the corporate form must be intentionally used to violate or evade a duty; second, disregard must be necessary and required to prevent unjustified loss to the injured party." *Id.* (internal citations and quotation omitted). Whether the corporate form should be disregarded is a question of fact. *Truckweld Equip. Co., Inc. v. Olson*, 618 P.2d 1017, 1021 (Wash. Ct. App. 1980).

The Washington Supreme Court held that alter ego is one way to establish the first element. *Morgan v. Burks*, 611 P.2d 751, 755 (Wash. 1980) (holding that intentional use of a corporation to violate or evade a duty owed to another may occur if "the liability-causing activity did not occur only for the benefit of the corporation, and the corporation and its controllers are thus "alter egos[.]"); *see also Joon Kim*, 2014 Wash. App. LEXIS, at *15. To establish alter ego, Washington courts consider whether there was "a commingling of property rights or interests as to render it apparent that they are intended to function as one" and that "to regard them as separate would aid in the consummation of a fraud or wrong upon others." *J.I. Case Credit Corp. v Stark*, 392 P.2d 215, 218 (Wash. 1964). Importantly, even when evidence of commingling is presented, that alone will not establish alter ego; there must be evidence of an intent for the corporations to function as one company. *Norhawk Invs., Inc. v. Subway Sandwich Shops, Inc.*, 811 P.2d 221, 224 (Wash. Ct. App. 1991). Additionally, Washington courts may consider whether corporate records or formalities were kept when analyzing alter ego. *Grayson v. Nordic Constr. Co.*, 599 P.2d 1271, 1274 (Wash. 1979) ("There was no evidence in this case that corporate records or formalities were not kept[.] […] The trial court's finding that

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 15

1
2

[corporation] operated as [stockholder's] alter ego was not supported by substantial evidence[.]").

3
4

Next, even if the requisite intent to disregard the corporate form exists, the second

5

element requires that disregarding is "necessary and required to prevent unjustified loss to the

6

injured party." *Morgan*, 611 P.2d at 756; *see also Norhawk Invs., Inc.*, 811 P.2d at 223 (About

7

the second element, the "wrongful corporate activities must actually harm the party seeking relief

8

so that disregard is necessary.  Intentional misconduct must be the cause of the harm that is

9

avoided by disregard.").

10

Appellants cite generally in their Opening Brief to Exhibit I and Exhibit J ("Junior

11

Secured Creditors' Supplemental Response to Trustee's Objection to Proofs of Claim" and

12

"Supplemental Declaration of Angus Ni in Support of Junior Secured Creditors' Omnibus

13

Response to Trustee's Objection to Proofs of Claim," respectively).  Dkt. ## 8-8, 8-9.  In their

14

Reply, Appellants cite generally to "AOB 1102–55."  Dkt. # 10 at 8.  The Court assumes that

15

citation reflects an attempt to cite Appellee's record at Trustee's App. at 1102–55.  This section

16

of the record begins in the middle of exhibits attached to the Supplemental Declaration of Angus

17

Ni in Support of Junior Secured Creditors' Omnibus Response to Trustee's Objection to Proofs

18

of Claim filed with the bankruptcy court.  Dkt. # 9-24 at 20.  The cited material begins in the

19

middle of Exhibit J, which includes the bank statements used in Appellants' "Black Box" theory;

20

and includes Exhibit N, which includes Appellants' first complaint in the Washington Superior

21

Court; Exhibit M, which includes the "warning letter" sent to Chan; Exhibit K, which includes

22

the figures and code used for the Recursive Algorithm theory; and ends on the second page of

23

Exhibit O, which allegedly shows the sources of $700,000 in funds transferred.  *Id.* at 20–73.  It

24

is unclear, as the Appellants have not explained, what evidence within the record at this general

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 16

citation the bankruptcy court considered in a clearly erroneous fashion in finding Appellants failed to present evidence sufficient to establish a claim based on alter ego for piercing the corporate veil.

After reviewing the evidence submitted by Appellants, the bankruptcy court found Appellants had not presented evidence that establishes "that there's been any [] commingling, that the debtor and Chan or other Chan-related entities appear or intended to appear to function as one, and that to regard them as separate would aid in consummation of fraud or wrong upon others."  Dkt. # 8 at 33.  Moreover, the bankruptcy court found that disregarding the corporate form was unnecessary to prevent unjustified loss to Appellants.  *Id.* at 33–34.  Appellants did not submit evidence "sufficient to show that Chan could not satisfy a judgment in their favor from her assets."  *Id.* at 33.  Based on the evidence provided to the bankruptcy court and included in the record on appeal, this Court does not find that the bankruptcy court's findings of fact on Appellants' alter ego/piercing the corporate veil claim were clearly erroneous as they were neither implausible nor illogical.  *In re Clark*, 548 B.R. at 252.

## VI

### CONCLUSION

Given the foregoing, the Court AFFIRMS the decision of the bankruptcy court.

Dated this 28 day of September, 2023.

John H. Chun
United States District Judge

ORDER AFFIRMING BANKRUPTCY COURT'S
RULING - 17